# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GENE P. BONVILLAIN, in his capacity as ASSESSOR for the PARISH OF TERREBONNE, STATE OF LOUISIANA** | **CIVIL ACTION** |
| **Versus** | **No. 09-3540 & consol cases Filed in: 09-3540; 09-3541, 09-5781; 09-5782; 09-5783; 09-5784; 09-5787; 09-5789; 09-5790; 09-5793; 09-5795; 09-5802; and 09-5803** |
| **LOUISIANA LAND & EXPLORATION CO., ET AL.** | **SECTION "C" (2)** |

## ORDER AND REASONS[1]

Before the Court are motions to dismiss filed by the defendants in Case Nos. 09-3540;

09-3541, 09-5781; 09-5782; 09-5783; 09-5784; 09-5787; 09-5789; 09-5790; 09-5793; 09-5795;

09-5802; and 09-5803 ("Defendants"), requesting the Court to dismiss the claims brought by

plaintiff Gene P. Bonvillain ("Bonvillain" or "Plaintiff") pursuant to Rule 12(b) of the Federal

Rules of Civil Procedure. Having considered the record, the memoranda of counsel and the law,

the Court has determined that the motions filed by the Defendants are GRANTED, PARTIALLY

GRANTED or PARTIALLY DISMISSED WITHOUT PREJUDICE for the following reasons.

---

[1] Chun-Ying Wu, JD candidate of Tulane University Law School, assisted in preparing this Order and Reasons.

# I.  BACKGROUND

These consolidated cases involve allegedly underreported and underpaid *ad valorem* taxes in Terrebonne Parish, Louisiana.  The plaintiff, Bonvillain, sues in his capacity as Assessor for Terrebonne Parish.  Count I alleges that the corporate Defendants violated La. Rev. Stat. § 47:2330, and Bonvillain seeks recovery of delinquent taxes.[2]  Count II alleges violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961- 1968, by the individual Defendants.  Count III alleges that Defendants committed state-law fraud.

In his official capacity, Bonvillain is responsible for the assessment of *ad valorem* taxes, including taxes on movable property owned by oil and gas companies operating inshore and offshore in the Gulf of Mexico within the jurisdiction of Terrebonne Parish.  Assessment of *ad valorem* taxes is premised on the market value of the property being assessed.  The Louisiana Tax Commission allows self-reporting of *ad valorem* taxes on such oil and gas property.  The complaints in these consolidated matters derive from a study conducted by Visual Lease Services, Inc. ("VLS") during 2008 and 2009 commissioned by Bonvillain to challenge the results of the self-reporting.  The claims are based on discrepancies between the results of that study and the tax liabilities actually reported by the Defendants.

The Defendants include several oil and gas companies[3], their chief executive officers ("CEOs"), and two accountants, Donna K. Lawrence[4] and Nancy DePaul, who reside in Texas.  For present purposes, the complaints filed in each case are identical in all relevant respects.  In

---

[2] The initial complaint alleges Rev. Stat. § 47:1852 as the basis for Count I.  Bonvillain later admits that he has no claim under La. Rev. Stat. § 47:1852. Rec. Doc. 285. The first amended complaint instead alleges La. Rev. Stat. § 47:2330 as the proper basis. Rec. Doc. 313.

[3] Except PetroQuest Energy, Inc., the corporate defendants are incorporated and have their principal place of business in a state other than Louisiana.

[4] Incorrectly identified as "Laurence" by the plaintiff.

these motions, the Defendants seek dismissal of the complaints on three common grounds: the plaintiff's standing, the sufficiency of the complaints with regard to allegations of fraud and/or RICO under Fed. R. Civ. P. 8 & 9, and personal jurisdiction.[5]

## II.  LAW AND ANALYSIS

### A.  STANDING

In certain of these motions, the Defendants argue that because the sheriffs are exclusively authorized to collect taxes under Louisiana law, Bonvillain is not a proper party plaintiff. Pursuant to both Louisiana Constitution and law, Defendants assert, the sheriffs have the sole right to collect state *ad valorem* taxes.  Furthermore, Defendants argue that La. Rev. Stat. § 47:1998(C) only allows the parish assessors to bring suit to challenge tax assessments. The section does not, Defendants contend, offer the assessors broad authority to bring suit to pursue delinquent taxes.  They further assert that Bonvillain failed to exhaust the only remedy available for assessors – the supplemental assessment under La. Rev. Stat. § 47:1966 – to correct assessments of prior years.

Bonvillain admits in the complaints that "[t]he collection of taxes is vested in the office of the sheriff of the Parish of Terrebonne." Case No. 09-3540, Rec. Doc. 1, ¶ 16.  However, he raises several arguments in the opposition to the motions.  Bonvillain contends that La. Rev. Stat. § 47:1998(C) should not be read in such a restrictive way as suggested by the Defendants. Bonvillain argues that he is the proper party to assert these claims because his constitutional

---

[5]   Defendants either filed motions to supplement their previous memoranda or incorporated others' arguments in the memoranda. *See* Rec. Docs. 224, 237, 240, 253, 257, 259, 261, 264, 265, 300, 358.  As such, all defendants virtually make same the arguments.

authority is to assess property taxes and he seeks to redeem the integrity of the assessment process that has been infected by the alleged fraud. Bonvillain also claims that La. Rev. Stat. § 47:2330 confers upon him the authority to impose penalties against the Defendants who made false tax reports. Therefore, he argues, he has standing to sue under Section 2330. In the alternative, Bonvillain contends that a standing defect is not fatal to the complaint because the sheriff will bring suit on the same grounds if the Court dismiss the cases at bar.

Moreover, Bonvillain submits that even assuming that Section 1966 is the only remedy under state law, the Court nevertheless should exercise jurisdiction under RICO. Since state remedial procedure cannot limit federal jurisdiction, Bonvillain argues, the failure to follow the supplemental assessment procedure does not deprive him of standing to bring these lawsuits. Moreover, he contends that dismissal is inappropriate because there is no state law proceeding parallel to that under RICO. Thus, even if the Court dismisses Count I for lack of standing, Bonvillain maintains it should exercise jurisdiction over the suits with regard to Counts II and III.

Defendants reply that whether the plaintiff has the property interest to bring a RICO suit is determined according to state law. According to Louisiana law, Defendants assert, Bonvillain does not have property interest and thus lacks RICO standing. Defendants also point out that cases cited by Bonvillain to support his position were all filed by agencies charged with the authority to collect taxes made subject of those suits. They indicate that the cases cited by Bonvillain are not directly relevant to the issue of whether an assessor has RICO standing to bring a representative action when he lacks statutory authorization.

**1. Standing for State Law Claims**

The capacity of a governmental entity or an individual in a representative capacity to sue or to be sued is determined by the law of the state in which the district court is located. Fed. R. Civ. P. 17(b)(3). In Louisiana, a plaintiff must have a real and actual interest in the action asserted. La. Code Civ. P. art. 681; *Cox Cable New Orleans, Inc., v. City of New Orleans*, 624 So. 2d 890, 895 (La. 1993). An action brought by a plaintiff who is not in the class of persons granted a remedy by law is subject to dismissal. *Cosey v. Cosey*, 376 So. 2d 486, 489 (La. 1979).

Under Article V, Section 27 of the Louisiana Constitution, a sheriff "shall be the collector of state and parish ad valorem taxes and such other taxes and license fees as provided by law." La. Const. art. V, § 27. The Supreme Court of Louisiana has construed this section as "grant[ing] the sheriffs the *sole right* to collect state and parish ad valorem taxes." *St. Landry Parish Police Jury v. Zerangue*, 664 So.2d 388, 390 (La. 1995) (emphasis added). Moreover, La. Rev. Stat. § 47:5 provides that:

> Each official of the State of Louisiana and of each political subdivision of this state, who is charged by law with the duty of collecting a tax, shall be the proper party to bring suits in his official capacity for the collection of such taxes.

By La. Rev. Stat. § 47:5, the Louisiana legislature exclusively confers the authority to bring an action to collect a tax to the officers who have power to collect such tax.

In contrast, a tax assessor's constitutional authority does not include tax collection. *See* La. Const. art. VII, § 18(D)[6]; *see also* La. Rev. Stat. § 47: 1903.[7] An assessor is responsible for

---

[6] Section 18(D) provides:
> Each assessor shall determine the fair market value of all property subject to taxation within his respective parish or district except public service properties, which shall be valued at fair market value by the Louisiana Tax Commission or its successor. Each assessor shall determine the use value of property which is to be so assessed under the provisions of Paragraph (C). Fair market value and use value of property shall be determined in accordance with criteria which shall be established by law and which shall apply uniformly throughout the state.

assessing property for purposes of *ad valorem* taxes. La. Rev. Stat. § 47: 1957(A).  He also has

the duty and authority to identify and assess any omitted or erroneously assessed property. La.

Rev. Stat. § 47: 1957F.  The Louisiana Constitution requires that "[t]he correctness of

assessment by the assessor shall be subject to review first by the parish governing authority, then

by the Louisiana Tax Commission or its successor, and finally by the courts, all in accordance

with procedures established by law." La. Const. art. VII, § 18(E).  To satisfy the constitutional

mandate, the Louisiana statute provides that after the assessor has prepared the list and assessed

the value of property, the list must be exposed for inspection by taxpayers. La. Rev. Stat. § 47:

1992A.  After the exposure period is closed, the local board of review shall certify the list within

a period of time. La. Rev. Stat. § 47: 1992B.  The Tax Commission shall consider the appeal of

any taxpayer, bona fide representative of an affected tax-recipient body, or assessor dissatisfied

with the determination of a local board of review. La. Rev. Stat. § 47:1989B.  Decisions rendered

by the Tax Commission become final unless appealed to the district court within thirty days. La.

Rev. Stat. § 47:1989D(1).

Additionally, La. Rev. Stat. § 47:1998 provides judicial review of the Tax Commission's

decisions.  Section 1998A provides that "[a]ny taxpayer or bona fide representative of an

affected tax- recipient body in the state dissatisfied with the final determination of the Louisiana

Tax Commission . . . shall have the right to institute suit . . . in the district court for the parish

where the Louisiana Tax Commission is domiciled."  Furthermore, "[t]he assessor shall bring

---

[7] Section 1903 provides:

The tax assessors shall enumerate and list and assess property as directed in this Chapter, and be subject to obligations prescribed by law.  They shall prepare and have ready their lists showing the valuations assessed by them, and lay the same before the tax commission within the time and in the manner prescribed by R.S. 47 1987 and R.S. 47:1988.

suit, when necessary to protect the interest of the state, and shall also have the right of appeal and such proceedings shall be without cost to him or the state." La. Rev. Stat. § 47:1998C.

Section 1998C does not provide Bonvillain with a basis to institute suit to pursue delinquent taxes because it only applies to judicial review of Tax Commission's determinations. Bonvillain argues that *Williams v. Belle of Orleans, L.L.C.*, 890 So.2d 670 (La. Ct. App. 4th Cir. 2004), supports his argument that Section 1998C provides broad authority to bring actions on behalf of the state. Yet, as Bonvillain recognizes, the Court of Appeal of Louisiana in *Williams* was addressing a specific issue: whether a tax assessor may bring suit to challenge the Tax Commission's decision to reduce *ad valorem* tax valuation of a riverboat casino. *Id.* at 672. The court in *Williams* held that, because the Tax Commission's deduction of the assessed amount of tax affected the state's interest, the assessor had standing to bring suit on behalf of the state to protect that interest. *Id.* at 675. Under the *Williams* rationale, the phrase "interest of the state" in Section 1998C refers to the interest regarding the result of the assessment of taxes, not the state's interest of other sorts. Thus, *Williams* does not support Bonvillain's contention that Section 1998C allows him to bring suits to collect underreported or delinquent taxes.[8]

Nor does La. Rev. Stat. § 47:2330 offer Bonvillain such authority. Section 2330 provides in relevant part:

> A.     When the property owner files a report that is false or fraudulent or grossly incorrect and the circumstances indicate that the taxpayer had intent to defraud the assessing authority, there shall be imposed, in addition to any other penalties provided, *a specific penalty of ten percent of the tax found to be due*.

---

[8] In cases relevant to Section 1998C that the Court has researched, the plaintiff-assessors were seeking review of the Tax Commission's decisions. *See Dow Chem. Co. v. Pitre*, 421 So. 2d 847, 850 (La. 1982); *Williams*, 890 So.2d at 672; *Johnson v. La. Tax Comm'n*, 828 So.2d 1150 (La. Ct. App. 4th Cir. 2002); *Giraud v. La. Tax Comm'n*, 336 So.2d 1037, (La. Ct. App. 4th Cir. 1976). None of these cases directly supports the proposition that a tax assessor may bring a suit under Section 1998C other than to challenge the Tax Commission's decisions, and Bonvillain fails to direct the Court to any case where a Louisiana court held otherwise.

> This specific penalty *shall be an obligation to be collected and accounted for in the same manner as if it were a part of the tax due*, and can be enforced either in a separate or in the same action for the collection of the tax.

(emphasis added). First, if Bonvillain argues that this section provides him with the authority to bring the actions at bar, the penalty allowed by this section is ten percent of the tax due, whereas in these actions he seeks to collect the delinquent taxes (Count I) and damages caused by fraud (Count III). Second, the specific penalty must be collected and accounted for in the same manner as if it were a part of the tax due. As noted above, collecting a tax obligation is the sheriff's exclusive authority, and only the sheriff may pursue tax obligations by initiating lawsuits. The Court cannot find any language in Section 2330 providing an assessor the authority to collect taxes or to sue on the parish's behalf to recover damages as a result of false tax reports.

Moreover, in Louisiana, a tax sale is the only lawful proceeding to collect delinquent *ad valorem* property taxes. *Fransen v. City of New Orleans*, 988 So. 2d 225, 240 (La. 2008). In *Fransen*, the Louisiana Supreme Court held that "La. Const. art. VII, § 25 implicitly prohibits any proceeding other than a tax sale for collection of delinquent ad valorem property taxes." *Fransen*, 988 So. 2d at 240. The object of restricting the measure to collect delinquent *ad valorem* taxes, the Louisiana Supreme Court has explained, is "to prevent the oppressive accumulation of costs, which had attended the indiscriminate institution of suits for the collection of taxes, and to substitute to it a less expensive and more expeditious method of realizing the public revenue." *Mayor v. Heyman*, 35 La. Ann. 301, 301 (1883).

Furthermore, the Louisiana Supreme Court has consistently held that where an assessor challenges the correctness of property tax assessments, he must adhere to the administrative procedure. *See Gisclair v. La. Tax Comm'n*, 16 So.3d 1132, 1136 (La. 2009); *Larrieu v. Wal-Mart Stores, Inc.*, 872 So. 2d 1157, 1162 (La. Ct. App. 1st Cir. 2004) ("[w]here the law provides for an administrative remedy, a claim must be processed through the administrative channels before a trial court will have subject matter jurisdiction to entertain the claim.").  The procedure to be applied if property is omitted in the assessments from prior years is set forth in La. Rev. Stat. § 47:1966.  Upon discovering that "any . . . property shall be omitted . . . or in any way erroneously assessed," the assessor or tax collector shall assess the property "for the whole period during which  [it] may have been omitted or improperly assessed." La. Rev. Stat. § 47:1966A.  No back taxes for more than three years can be assessed. *Id.*  "Assessments of omitted or improperly assessed property *shall appear upon a supplemental roll and be filed in the same manner as regular tax rolls*." *Id.* (emphasis added).   The assessor is required to mail notice of the supplemental assessment to the affected taxpayer. *Id.*  In the event of any protest by the taxpayer, the decision of the assessor "shall be promptly made and be final." *Id.* Moreover, the taxpayer can appeal to the courts within five days from the decision of the assessor on the protest. *Id.*

The Tax Commission enjoys broad authority under Section 1966.  It may, with the assistance by assessors and tax collectors, inspect the assessment rolls. La. Rev. Stat. § 47:1966B.  The Tax Commission is obligated to search for taxable property not on the rolls and put assessors and collectors on notice for "any and all property found by it which is not on the assessment roll and which is subject to taxation." La. Rev. Stat. § 47:1966 B-C.  Moreover, where the assessors

and tax collectors fail to assess such property and collect such taxes, the Tax Commission "is authorized in the name of the state" to bring an action against them "on their respective bonds for the amount of all taxes due to the state and parish on such nonassessed property." La. Rev. Stat. § 47:1966D.

In sum, the Court determines that Count I should be dismissed because (1) under Louisiana law only the officials charged with the authority to collect taxes may bring an action for the collection of such taxes; (2) Louisiana law confers the tax-collection authority solely to the sheriffs; and (3) neither Section 1998 nor Section 2330 confers Bonvillain the authority to collect taxes or to pursue delinquent taxes. The Louisiana fraud claim set forth in Count III is also subject to dismissal because, in addition to the forgoing reasons, Section 1966 provides only a limited remedy for the assessor where any property is omitted or in any way erroneously assessed.

Arguing that the Court's jurisdiction is not limited by state law, Bonvillain urges the Court to disregard Louisiana's limited remedial procedures for collection of delinquent taxes and for correction of prior assessments. This contention is meritless. Federal courts, when exercising jurisdiction over state law claims based on diversity of citizenship, apply state substantive law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Since the Court's subject matter jurisdiction over Count I and Count III, both of which are state law claims, is based on diversity of citizenship, the Court must respect and apply Louisiana law, which does not recognize Bonvillain's right to bring the claims.

Bonvillain finally avers that his failure to seek administrative remedies does not require dismissal of the cases at bar. He argues that his cases involve "complex constitutional challenges

to the exercise of the power of a taxing authority," which is a question that the Tax Commission is not capable of addressing. Rec. Doc. 311, p. 20. In exceptional situations a court may excuse exhaustion requirement at its discretion. *Garner v. U.S. Dep't of Labor*, 221 F.3d 822, 825 (5th Cir. 2000) ("A failure to exhaust administrative remedies may be excused when the claimant advances a constitutional challenge unsuitable for determination in an administrative proceeding, or when the unexhausted remedy is plainly inadequate."). In *Garner*, the issue was whether the constitutional protection that "[n]o Bill of Attainder or ex post facto law shall be passed" was violated. *Id.* at 825. The Fifth Circuit held that requiring exhaustion would be an exercise in futility because the agency, the Secretary of Labor, was not capable of resolving such a constitutional question. *Id.*

However, the Court can not find that Bonvillain presents a constitutional challenge here. The underlying allegation is that the Defendants omitted or underreported property with regard to the LAT12 forms. That allegation falls squarely within the statutory language of Section 1966, which demands the assessor, upon discovery of such omission or misreporting, to correct the assessments of prior years through supplement assessments. In addition, the purpose of Section 1966, which contains detailed procedural requirements, is to give the taxpayer the opportunity to file with the assessor a protest to the assessment, and to appeal to a court if the assessor's decision is adverse. *La. Cent. Lumber Co. v. Catahoula Parish Sch.*, 185 So. 885, 887 (La. 1938). Any dissatisfaction with the Tax Commission does not justify the disregard of the procedures set forth in the Louisiana Constitution and law. Even if there is a constitutional issue as Bonvillain argues, it would relate to the allocation of authority among state tax agencies, which is typically the province of the state legislature and state courts and not the federal courts. As a result, the

Court does not deem it appropriate to excuse the plaintiff from exhausting the administrative remedies provided by state law.

## 2. RICO Standing

RICO provides a private civil action to recover treble damages for injury suffered as a result of a violation of its substantive provisions. *Sedima, S.P.R.L. v. Imrex Co.*, Inc., 473 U.S. 479, 481 (1985). However, as a preliminary matter, the plaintiff must establish that he has standing to sue. *Price v. Pinnacle Brands, Inc*., 138 F.3d 602, 606 (5th Cir. 1998). A plaintiff has RICO standing for a civil claim when the he is "injured in his business or property by reason of a [RICO] violation." 18 U.S.C. § 1964(c); *Price*, 138 F.3d at 606. Courts will look to state law to determine whether a particular interest amounts to property under RICO. *Price*, 138 F.3d at 607; *see also Doe v. Roe*, 958 F.2d 763, 768 (7th Cir. 1992).

A state official has standing to bring a representative action under RICO if the underlying property interest is vested within his authority. *Indiana ex rel Carter v. Pastrick*, 384 F. Supp.2d 1261, 1268 (N.D. Ill. 2005). In *Pastrick*, the state attorney general, on behalf of Illinois State and the City of East Chicago, brought an action under RICO against certain city officials and contractors, alleging that the defendants had engaged in conducting the affairs of the city through a pattern of racketeering activities. *Id*. at 1264-65. When asked to rule on defendants' challenge to the attorney general's standing, the court examined Illinois state law to decide whether the plaintiff had a property interest under RICO. *Id*. at 1266. The State Board of Accounts Act (SBAA), an Illinois act consulted by the court, provided that the State Board of Accounts (SBOA) was charged with examining all accounts and all financial affairs of every public office and officer, state office, state institution, and entity. *Id*. at 1267. The SBOA would report to the state

attorney general if it found any officer's or employee's malfeasance, misfeasance, or nonfeasance in office. *Id*. Such report conferred upon the attorney general both the duty and exclusive authority to pursue claims arising from the state officers' acts or omissions. *Id*. The *Pastrick* court held that the attorney general had representative standing. *Id*. It reasoned that the state act "ma[de] the Attorney General the owner of the property that ha[d] allegedly been injured because the Attorney General ha[d] the exclusive right to pursue recovery for that property." *Id*.

The Court finds that Bonvillain does not have exclusive authority as to tax assessment or tax collection. As explained above, although the assessor is responsible for initially assessing property for purposes of *ad valorem* taxes, the Louisiana Constitution demands several administrative and judicial reviews of the correctness of the assessments prepared by assessors. The Louisiana Legislature has conferred upon the sheriffs the sole right to collect taxes and to pursue delinquent taxes. Also, it is the Tax Commission, not the assessor, that is charged with ensuring uniformity in the assessment of property taxes. La. Rev. Stat. § 47:1837; *Williams*, 890 So. 2d at 672. In addition, the assessor's authority to deal with omitted or erroneously reported property is limited. He shall either convene a supplemental assessment under Section 1966 or impose a penalty according to Section 2330. Neither section gives Bonvillain the authority to sue on the parish's behalf for injuries in the form of defrauded taxes.

Since Louisiana law does not grant him the exclusive authority to assess or collect taxes, Bonvillain cannot bring a RICO action on behalf of the parish against the Defendant. *Pastrick* has explained the difference between a government entity's participation in the process and its entitlement to pursue the property. Only when an entity is statutorily empowered does it have

the legal standing to bring suit to protect such interest. The attorney general in *Pastrick* had the capacity to act on behalf of the state because the Illinois legislation, SBAA, specifically authorized him to undertake a lawsuit to pursue the claims. In contrast, Bonvillain does not enjoy such authority. The Louisiana tax authority consists of assessors, boards of review, tax collectors (sheriffs), and the Tax Commission. Although assessors play a role in property tax assessments, the sheriffs undertake the duty and authority to enforce tax obligations. Bonvillain does not acquire the right to pursue the Defendants merely because of his participation in the process.

Bonvillain's reliance on two Supreme Court's decisions is misplaced. In *Pasquantino v. United States*, 544 U.S. 349 (2005), a criminal case against liquor smugglers, the Supreme Court held that the defendants' routine concealment of imported liquor from Canada customs officials constituted a scheme or artifice to defraud Canada of taxes due on the smuggled goods. *Id*. at 357. However, *Pasquantino* does not address which governmental entity has the right to pursue the defrauded taxes. Similarly, *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006), does not support Bonvillain's contention. The Supreme Court in *Anza* rejected an entrepreneur's RICO claim because he could not establish that his competitor's scheme to defraud New York was the proximate cause of his injuries. *Id*. at 460-61. The Supreme Court suggested that a tax authority may be able to initiate its own RICO suit if it was defrauded of tax revenues. *Id*. at 460. But nowhere in *Anza* did the Supreme Court touch on whether tax assessors had standing to bring a RICO action.

Bonvillain finally contends that dismissal is inappropriate because the state legislature or courts cannot restrict federal jurisdiction. Bonvillain apparently confuses standing and

jurisdiction, both of which are required when commencing a lawsuit. The Court certainly has

RICO jurisdiction if the plaintiff presents a *prima facie* case, regardless of whether state law

limits his remedial choices. However, the Court must dismiss Bonvillain's RICO claim because

he does not have standing to bring a representative action.

## B. FRAUD ALLEGATIONS

Next, the Defendants challenge the sufficiency of the plaintiff's allegations as to fraud

under Fed. R. Civ. P. 8 & 9. A complaint is required to have "a short and plain statement of the

claim showing that the pleader is entitled to relief" in order to give the defendant fair notice of

the nature of the claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); Fed. R. Civ. P.

8(a)(2). Although the pleading need not include detailed factual allegations, "a plaintiff's

obligation to provide the grounds of his entitlement to relief requires more than labels and

conclusions." *Id*. (internal quotation marks omitted). "Nor does a complaint suffice if it tenders

naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct.

1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

"Factual allegations," before being taken as true, "must be enough to raise a right to relief above

the speculative level." *Twombly*, 550 U.S. at 555. In *Iqbal*, the Supreme Court explained the

plausibility standard:

> [T]he tenet that a court must accept as true all of the allegations contained in a
> complaint is inapplicable to legal conclusions. Threadbare recitals of the
> elements of a cause of action, supported by mere conclusory statements, do not
> suffice. . . . Second, only a complaint that states a plausible claim for relief
> survives a motion to dismiss. . . . Determining whether a complaint states a
> plausible claim for relief will . . . be a context-specific task that requires the
> reviewing court to draw on its judicial experience and common sense. . . . In
> keeping with these principles a court considering a motion to dismiss can choose
> to begin by identifying pleadings that, because they are no more than conclusions,
> are not entitled to the assumption of truth. While legal conclusions can provide

the framework of a complaint, they must be supported by factual allegations.
When there are well-pleaded factual allegations, a court should assume their
veracity and then determine whether they plausibly give rise to an entitlement to
relief.

*Iqbal*, -- U.S. --, 129 S. Ct. at 1949-50.

Rule 9(b) further requires "all averments of fraud" to be "stated with particularity."

Under Louisiana law, delictual fraud consists of following elements: 1) a misrepresentation of

material fact; 2) made with the intent to defraud; 3) causing justifiable reliance with resultant

injury. *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 627 (5th Cir. 1999). To sufficiently

allege fraud, a plaintiff must "specify the statements contended to be fraudulent, identify the

speaker, state when and where the statements were made, and explain why the statements were

fraudulent." *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). The "time, place,

contents, and identity" standard is a context-specific inquiry, which "has long played that

screening function, standing as a gatekeeper to discovery, a tool to weed out meritless fraud

claims sooner than later." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009).

Therefore, Rule 8 and Rule 9, construed together, require "simple, concise, and direct"

allegations of the facts and circumstances constituting fraud, which make relief plausible. *Id.* at

187. Such requirements apply to both state-law fraud claims and RICO claims predicated on

fraud. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338-39 (state-law fraud claims); *WMX

Tech.*, 112 F.3d at 177 (RICO claims).

Moreover, a plaintiff must allege the defendant's intent to defraud him and that he

reasonably relied on the fraudulent statement. *WMX Tech.*, 112 F.3d at 177. Although intent

may be averred generally, a plaintiff must allege "the existence of facts and circumstances

sufficient to warrant the pleaded conclusion that fraud has occurred." *In re Harber Oil Co.*, 12

F.3d 426, 429 (5th Cir. 1994) (internal quotation marks omitted). The inference of fraud may be based on allegations of facts that show the defendant's motive to commit fraud. *Tuchman v. DSC Comm'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994). Fraud pleadings may even be based on information and belief if the facts are particularly within the defendant's knowledge. *Id*. However, the Fifth Circuit cautions that "this luxury must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *Id*.

In *Grubbs*, a psychiatrist alleged that a hospital and some of its doctors filed fraudulent medical bills to the government. *Grubbs*, 565 F.3d at 184. The complaint described in detail the date, place, and participants of the meeting, at which the doctors attempted to bring the psychiatrist into their fraudulent scheme, and the content of the plot. *Id*. at 191-92. It also stated specific dates that each doctor falsely claimed to have provided services to patients. *Id*. at 192. The psychiatrist, though, did not aver the intent or vicarious liability of the hospital. *Id.* The Fifth Circuit found that it was reasonable to infer from the allegations that the doctors' fraudulent records caused the hospital to present false claims to the government. *Id*. However, the Fifth Circuit held that the complaint failed to allege that the hospital had intent to defraud because the hospital might have been inadvertently processed the claims exaggerated by its doctors. *Id*.

Here, the complaints fall short of satisfying these requirements for the following reasons. First, Bonvillain does not sufficiently specify the fraudulent statements. Since Bonvillain can specify to the penny the amount of alleged tax discrepancies with regard to some property owned by the corporate Defendants, it is apparent to the Court that exact nature and details of the fraud are susceptible of articulation by Bonvillain. Yet while claiming that the Defendants

continuously made fraudulent reports, Bonvillain does not fully identify, to the extent known to him, what and which property is omitted from or falsely reported in the LAT12 forms.[9]

Second, although the complaints state that the chief executive officers committed the alleged fraud, it appears to the Court that Bonvillain is speculating as to the exact identity of the persons making the false statement. Reading throughout the complaints, the Court does not find descriptions about how the corporate officers engaged in the alleged fraudulent scheme. The complaints merely state that the officers are "employed by the [the corporations] as the person responsible for the preparation and submission of tax documents" and that they "conducted and participated in" the fraud. *See e.g*. Case No. 5781, Rec. Doc. 1, ¶ 51. The complaints state that the CEOs "engaged in conduct in violation of 18 U.S.C. § 1341 by causing to be mailed various documents for the purpose of carrying out this scheme to defraud," which is a mere recital of the element of mail fraud. *Id*. at ¶ 53. Similarly, the allegation that the officer "caused [the corporation] to submit under oath LAT12 forms" lacks sufficient detail of the fraudulent scheme and how the individual defendants were involved in it. *Id*. at ¶ 64. More importantly, Bonvillain admits in his opposition that he in fact does not know whether the corporate officers were involved in the allegedly fraudulent plot:

---

[9] For example, in the complaint against Burlington Resources Oil & Gas Co., Bonvillain states that:
   [In]the Inshore Field known as Pass Wilson (comprised of 15 wells), the operator reported non-exempt property having a depreciation value of $2,740,700.00, when in fact that same property at that location had an actual depreciated value of $5,103,661.62.
   [T]he VLS Study indentified property having a fully depreciated value of $84,414,577.00 that had not been reported by the operator at all for the tax years 1998-2008, inclusive. . . .
   Plaintiff is reliably informed and on the basis of that information alleges that Burlington had other and additional property in service at other fields that was also not reported. . . .
   By way of illustration of the nature of property that was not reported by Burlington are the following photographic images of such property taken in 2009.
Case No. 09-3541, Rec. Doc. 1, ¶¶ 31-33. The complaint does not clearly specify each omitted or underreported equipment and its value. Given that the alleged amount of delinquent taxes is quite substantial and that fraud is a severe accusation, the Defendants are entitled to more detailed descriptions of the allegedly omitted or misreported property and how Bonvillain determined that the property was falsely reported.

> For clearly, if, as alleged in the Complaints, there was a fraud committed against Terrebonne Parish, then some individual or individuals within each of the companies can be held responsible. . . . If . . . they are not the right parties, then it will be a simple enough matter for them to identify the responsible parties, so that Mr. Bonvillain can amend the Complaints and the Court can obtain personal jurisdiction over those individuals.

Rec. Doc. 307, p. 17.

Third, the complaints do not include enough factual allegations to indicate the intent to defraud. After stating that some property is omitted or misreported, the complaints then describe the tax forms as "false, fraudulent, and materially misleading" and merely aver that the Defendants submitted the tax forms "with the intent to deceive" the plaintiff. *See e.g.* Case No. 09-3540, Rec. Doc. 1, ¶ 72. Bonvillain argues in his opposition memoranda that it is reasonable to infer that the Defendants intended to defraud the parish because the Defendants repeatedly submitted incorrect tax reports.[10] He tenders a theory: "[t]he Defendants had every incentive to commit fraud: high return if successful, combined with low probability of discovery. It is as though a card shark were playing blackjackwith a blind man." Rec. Doc. 311, p. 24. Such a theory provides a generic description of motive and does not satisfy the *Twombly*/*Iqbal* standard and Rule 9(b). Without further factual allegations, the corporate Defendants might have submitted that tax forms in question inadvertently just as the hospital did in *Grubbs*. Moreover, unlike the plaintiff in *Grubbs* who described how the doctors devised their scheme of filing false medical bills and the dates, places, participants, and content of specific meetings among them, here Bonvillain provides far less details relating to the how the individual defendants involved in the fraudulent scheme. If Bonvillain could have clearly specified the omitted or underreported

---

[10] Bonvillain cites *Gagliardi v. United States*, 81 Fed. Cl. 772, 779 (2008), and several cases to support an inference of intent from repeated understatements. However, these cases were about disputes between taxpayers and the government on false filings of income under Internal Revenue Code. *See e.g. Gagliardi*, 81 Fed. Cl. at 777. These cases are not particularly relevant to Bonvillain's case because nowhere did the courts discuss Rule 9(b).

property, stated in detail how he determined that the reports were false, or averred facts of how the individual defendants engaged in the scheme, the inference of intent would be more plausible. However, where the pleading lacks such details, the Fifth Circuit advises that "certain motives alleged, especially those universal to corporations and their officers, do not suffice to establish an inference of fraud under Rule 9(b)." *Flaherty & Crumrine Preferred Income Fund v. TXU Corp.*, 565 F.3d 200, 213 (5th Cir. 2009). Furthermore, given that the facts are not wholly within the Defendants' control, a farfetched inference should not be allowed. *See Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2nd Cir. 1990) (holding that the complaint must still provide circumstantial facts supporting a strong inference of fraud even when the defendant peculiarly possesses knowledge). Therefore, the Court finds that the complaints fail to allege the requisite intent.

The Defendants argue that the allegation in the complaints that Bonvillain reasonably relied upon the LAT12 forms is a conclusory allegation. The Defendants assert that, pursuant to La. Rev. Stat. § 47:1957F, Bonvillain must take actions to verify whether all tax forms are correct and complete. For this reason, they contend, Bonvillain cannot allege reliance on the forms. The Court disagrees. La. Rev. Stat. § 47:1957F imposes liability on an assessor who "intentionally or knowingly or through negligence omits any taxable property on the assessment list, or permits it to be omitted therefrom." Unless the assessor has reasons to doubt the veracity of the tax forms filed by taxpayers, the language of Section 1957F does not forbid the assessor from relying on the forms. Moreover, the LAT12 forms are filed under oath by the affected taxpayers.[11] Bonvillain also alleges that the Tax Commission has adopted a self-reporting

---

[11] On the coversheet of the LAT12 form, the filing person must sign above the following declaration:

system with regard to oil and gas production equipment in Offshore Field because personal inspection is generally not feasible. *See e.g.* Case No. 09-3540, Rec. Doc. 1, ¶ 18. Thus, the Court finds that Bonvillain has properly alleged his reliance on the tax forms.

Nevertheless, the complaints still have other defects in alleging reliance. For example, the complaints allege that the Defendants have engaged in the false and fraudulent nonreporting and underreporting since 1998; however, the VLS study that Bonvillain relied on only investigated property owned by the corporate Defendants in 2008 and 2009. The complaints do not provide enough facts to explain why Bonvillain extended the dates. Also, the complaints state that Bonvillain "is reliably informed and on the basis of that information alleges that [the Defendants] had other property in service at other fields during tax year 1998-2008 that was also not reported." *See e.g.* Case No. 09-5781, Rec. Doc. 1, ¶ 33. Bonvillain, however, does not aver any fact regarding this specific information and why he relied on it.

## C. PERSONAL JURISDICTION

Next, the CEOs who are named as individual defendants in these consolidated cases file motions to dismiss Count II and Count III for lack of personal jurisdiction. Rec. Docs. 213, 215, 219, 221, 224, 235, 239. [12] They submit affidavits testifying that they are residents of Texas and have no personal property, mailing address, phone number, accounts or funds, or registered agent in Louisiana. The affidavits either state that the CEOs never travelled to Louisiana or that they

---

I declare under penalties for false reports that this return has been examined by me and to the best of my knowledge and belief is a true, correct, and complete return. If the return is prepared by other than the taxpayer, his declaration is based on all the information relating to the matters required to be reported in the return of which he has knowledge.
Case No. 09-3540, Rec. Doc. 1, Exh. 1.

[12] The CEOs who filed motions to dismiss pursuant to Rule 12(b)(2) include: Jeffery D. Hildebrand (Hilcorp), H. B. Sallee (Texas Petroleum), William K. Gayden (Merit Energy), H. Craig Clark (Forest Oil), Roger B. Plank (Apache), Edgar A. Anderson (Maritech Resources), John R. Stoika (Castex Energy), and Mark. A. Fischer (Chaparral Energy).

merely made a few short trips to Louisiana for corporate purposes.  The affidavits also state that the CEOs' responsibilities do not include preparation and submission of any property tax documents and that they have never involved such activities.  In addition, the CEOs declare that they do not have personal knowledge of the LAT12 forms filed with Terrebonne Parish and that they were never involved in mailing any of the forms.

As for the RICO claim, the defendant CEOs argue that the service of process was improper pursuant to18 U.S.C. § 1965(a) since they never were found, do not reside, or do not transact their affairs in this district.  Additionally, they maintain that 18 U.S.C. § 1965(b) or (d) allows nationwide service on a non-resident only if personal jurisdiction over other RICO defendant is established.  Because in each complaint, the corporate officer is the only RICO defendant, nationwide service is improper.  Regarding the state law claim, the CEOs argue that state long-arm statute does not authorize personal jurisdiction over them, for they do not have minimum contact with the State of Louisiana.  In addition, they maintain that the fiduciary shield doctrine protects them from being haled to this jurisdiction.

In opposition, Bonvillain does not dispute that the materials before the Court are insufficient to establish general jurisdiction over the CEOs.  Bonvillain, however, responds that specific jurisdiction of this Court can be established by the repetitive conducts of submitting fraudulent LAT12 forms to Terrebonne Parish.  In addition, the heightened pleading requirement under Rule 9(b) is satisfied, Bonvillain contends, because the allegations in the complaints, regarded as true, have shown that the individual Defendants caused the allegedly fraudulent documents to be mailed to the Parish.  He argues that the fraudulent intent may be inferred from repeated submissions of false LAT12 forms.  Bonvillain also maintains that the fiduciary shield

doctrine has no application to intentional torts, including RICO claim and fraud. Nevertheless, should the Court find allegations insufficient to establish personal jurisdiction over the CEOs, Bonvillain, arguing that material relevant to proving the fraud are solely in the Defendants' control, asks the Court to allow jurisdictional discovery.

"When a challenge is made to the court's *in personam* jurisdiction, the plaintiff has the burden of making a prima facie case by alleging facts in the complaint and affidavits sufficient to establish jurisdiction over the non-resident defendants." *Caldwell v. Palmetto State Savings Bank of S.C.*, 811 F.2d 916, 917 (5th Cir. 1987). The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery. *Stuart v. Spademan*, 772 F.2d 1185, 1992 (5th Cir. 1985). If the court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, however, the non-moving party need only make a *prima facie* showing, and the court must accept as true the non-mover's allegations and resolve all factual disputes in its favor. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). Nevertheless, the plaintiff cannot meet this burden merely by making conclusory allegations or farfetched inferences. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001); *see also Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003) (after the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must submit affirmative evidence supporting the exercise of jurisdiction). In addition, when specific jurisdiction is premised on fraudulent actions aimed at the forum, the pleading must allege specific facts with requisite particularity. *Breckenridge Enterprises*, 2009 WL 1469808 at *7 (N.D. Tex. 2009); Fed. R. Civ. P. 9(b).

A federal court may exercise personal jurisdiction over a non-resident defendant to the same extend as a state court in the state where the district sits. *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 242 (5th Cir. 2008). Personal jurisdiction over a non-resident defendant may be established when (1) the defendant has purposefully availed himself of benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice. *Walk Haydel*, 517 F.3d at 243. The court may exercise specific jurisdiction when the defendant "purposefully directed [his] activities at the forum state and the litigation results from alleged injuries arising out of or related to those activities." *Id*. If minimum contacts are shown, jurisdiction exists unless the defendant can make a compelling case that it would violate traditional notions of fair play and substantial justice. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999). Factors that courts consider to make this determination include: "(1) the burden on the defendant; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolutions of controversies; and (5) the shared interest of the several states in furthering fundamental social policies." *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir.1990) (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 at 113 (1987) (internal quotation marks omitted)).

A federal court may exercise personal jurisdiction over a non-resident defendant only if a statute authorizes service of process on the non-resident defendant. *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 538 (9th Cir.1986). RICO's Venue and Process section, 18 U.S.C. § 1965, provides in relevant part:

(a) Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or *transacts his affairs*.

(b) In any action under [civil RICO] in any district court of the United States in which it is shown that *the ends of justice require* that *other* parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

. . .

(d) All other process in any action or proceeding under this chapter may be served on any person in any judicial district in which such person resides, is found, has an agent, or transacts his affairs.

(emphasis added). Pursuant to Section 1965(a), a civil RICO action may be instituted in any federal district where the defendant resides, is found, has an agent, or transacts his affairs. The language "transacts his affairs" in Section 1965(a) has been construed to require traditional minimum contacts analysis. *See Cory v. Aztec Steel Building, Inc*., 468 F.3d 1226, 1230 (10th Cir. 2006); *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71 (2nd Cir. 1998); *Caldwell*, 811 F.2d at 917; *Butcher's Union*, 788 F.2d at 539-40; *Hawkins v. The Upjohn Co.*, 890 F. Supp. 601, 606 (E.D. Tex. 1994).

However, some courts suggest that, pursuant to the fiduciary shield doctrine, personal jurisdiction over a non-resident RICO defendant is improper when jurisdiction was established by the defendant's conduct solely as a corporate officer. *Payne v. Marketing Showcase, Inc.*, 602 F. Supp. 656, 659 (N.D. Ill. 1985); *Bulk Oil (USA) Inc. v. Sun Oil Trading Co.*, 584 F. Supp. 36, 39 (S.D.N.Y. 1983).[13]

---

[13] The doctrine generally is stated as: "[j]urisdiction over individual officers and employees of a corporation may not be predicated on the court's jurisdiction over the corporation itself, unless the individuals are engaged in activities within their jurisdiction that would subject them to the coverage of the state's long-arm statute." *Donovan v. Grim Hotel Co*., 747 F.2d 966, 973 (5th Cir. 1984) (quoting 4 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE, West 1983 Supp., at 58-60).

This view has been questioned and qualified to be applicable only where a party resorts to the state long-arm statute to establish jurisdiction. *Phoenix Home Life Mut. Ins. Co. v. Brown*, 857 F. Supp. 7, 10 (W.D.N.Y. 1994) (emphasizing that the fiduciary shield doctrine has been abolished by the highest court of New York State); *Rolls-Royce Motors, Inc. v. Charles Schmitt & Co.*, 657 F. Supp. 1040, 1059 (S.D.N.Y. 1987) (reasoning that the doctrine is not grounded in the due process clause of the First and Fourteenth Amendments); *Soltex Polymer Co. v. Fortex Indus., Inc.*, 590 F. Supp. 1453, 1458 (E.D.N.Y.1984). Moreover, other courts have refuted *Bulk Oil* outright. *See Lexington Ins. Co. v. Forrest*, 263 F. Supp. 2d 986, 994 (E.D. Pa. 2003); *Am. Trade Partners, L.P. v. A-1 Int'l Importing Enters.*, Ltd., 755 F. Supp. 1292, 1303 (E.D. Pa.1990); *Abeloff v. Barth*, 119 F.R.D. 315, 328 (D. Mass. 1988). The common reasoning of these decisions is that the fiduciary shield doctrine as a judicial construction of a state long-arm statute cannot limit the federal jurisdictional scope conferred by RICO.

Although the Fifth Circuit has not specifically determined whether the fiduciary shield doctrine applies to RICO claims, it nonetheless has held that the doctrine does not insulate a defendant from jurisdiction when the defendant committed fraud or an intentional tort directed at the forum. *Gen. Retail Serv., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 794-95 (5th Cir. 2007) ("the fiduciary-shield doctrine . . . does not prohibit [the defendant] from being held personally liable for his own tortious conduct simply because he is an officer of a corporation").[14] Moreover, the Fifth Circuit in *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 973

---

[14] Another exception to the fiduciary shield doctrine recognized in the Fifth Circuit is when the corporation is deemed an *alter ego* of the defendant and thus its corporate entity should be disregarded. *See Stuart*, 772 F.2d at 1997. Moreover, several courts have rejected the fiduciary shield argument in the RICO context when the corporation is used as a shell. *See e.g. Miller Brewing, Inc. v. Landau*, 616 F. Supp. 1285, 1289-90 (E.D. Wis. 1985) (where a corporation is a mere shell for its owner, the employee/owner's actions on behalf of the shell may be viewed as his own for purposes of subjecting him personally to the court's jurisdiction). In his opposition

(5th Cir. 1984), also decided that the doctrine did not protect a non-resident defendant from jurisdiction because he was sued under federal statutes in his own capacity for specific acts. In *Donovan*, the Fifth Circuit explained that personal jurisdiction over a non-resident corporate agent "plainly comport[ed] with constitutional due process requirements" where minimum contacts existed because he purposefully availed himself of the benefits of the forum and engaged in conduct that bears reasonably foreseeable consequences. *Id*. at 974 ("Nor is due process offended when a non-resident corporate agent or employee is made subject to personal jurisdiction in the forum state for a foreseeable consequence therein of his personal act performed elsewhere, although allegedly performed only as a corporate functionary.") (citing *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 1487 (1984)). Therefore, where a non-resident defendant can be held personally liable for his own act pursuant to a federal statute, such as RICO, he cannot escape jurisdiction simply by arguing that he is a corporate agent. *See Id*. at 973.

Nationwide service of process on other non-resident defendants is authorized under RICO when (1) the plaintiff is able to establish personal jurisdiction over at least one defendant under Section 1965(a) and (2) the ends of justice so require. *David v. Signal Int'l, LLC*, 588 F. Supp. 2d 718, 724 (E.D. La. 2008).[15] Courts agree that the-ends-of-justice analysis is on case-

---

[15] memorandum, Bonvillain mentions the fact that Hildebrand is the Chief Executive Officer and sole owner of Hilcorp. Bonvillain also argues that the leeway in pleading fraud should be allowed because the non-resident corporate officers are attempting to hide behind the corporate shield. Rec. Doc. 307, p. 16. However, there is no allegation in the complaints that the defendant CEOs used the corporations as mere shells or that they abused the corporate entities. Moreover, this "pierce-the-corporate-veil" argument is unnecessary because the Fifth Circuit has held that the corporate entity does not shield the officer from jurisdiction when he purposefully avails himself of the forum by committing fraud or intentional torts. *Gen. Retail Serv., Inc.*, 255 F. App'x at 794-95. Thus, the inquiry here is whether the defendant CEOs participated in submitting the allegedly false tax forms.

[15] As the Tenth Circuit has pointed out, there is a circuit split on the issue of which provision, namely, Section 1965(b) or Section 1965(d), is the basis for nationwide service of process under RICO. *Cory*, 468 F.3d at 1230. The Fifth Circuit has not decided the issue, but sister district courts in this circuit have taken the view that section 1965(b) is the proper ground. *Rolls-Royce Corp. v. Heros, Inc.,* 576 F. Supp. 2d 765, 779 (N.D. Tex. 2008); *Hawkins*, 890 F. Supp. at 605-06.

by-case basis.  *See Cory*, 468 F.3d at 1232 (mere allegation of sustaining damages and litigation costs did not satisfy the "ends of justice" standard); *Rolls-Royce v. Heros, Inc.*, 576 F. Supp. 2d at 779-80; *David v. Signal Int'l*, 588 F. Supp. 2d at 724 (the ends-of-justice requirement is met when the defendants employed a common fraudulent scheme in multiple countries).[16]

The argument made by the defendant CEOs that Section 1965(b) and (d) do not grant this Court personal jurisdiction is misplaced.  Section 1965(b) or (d) becomes relevant when *other* RICO defendants are named in the complaint or added during the proceeding.  Because each CEO is the only RICO defendant named in each case, Section 1965(b) or (d) is not relevant to the discussion.  Thus, the Court only needs to decide whether the CEOs, who allegedly conducted or participated in submitting fraudulent LAT12 forms to Terrebonne Parish, have minimum contact with this district.

Bonvillain claims that the CEOs are personally liable for their violations of RICO.  He alleges that they continuously conducted or participated in the preparation and submission of fraudulent LAT12 forms to Terrebonne Parish in violation of federal mail fraud statute, 18 U.S.C § 1341. *See e.g.* Case No. 09-3540, Rec. Doc. 1 ¶¶ 36, 50, 53, 54.  He also asserts that each of them committed a pattern of racketeering activity because two or more violations occurred in the

---

[16] The Ninth Circuit has construed the language "the ends of justice" in Section 1965(b) to require that "the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators." *Butcher's Union*, 788 F.2d at 539.  However, the Tenth Circuit disagreed.  It held that "[ends-of-justice] analysis is not controlled by the fact that all defendants may be amenable to suit in one forum." *Cory*, 468 F.3d at 1232.  The Tenth Circuit reasoned that the reading by *Butcher's Union* neither observed the congressional directive of liberal construction of RICO to effectuate its purposes, nor did it accord with the antitrust legislation that RICO was modeled. *Id.*  Courts in the Fifth Circuit also split on this issue. *See Rolls-Royce. v. Heros, Inc.*, 576 F. Supp. 2d at 779-80 (holding that Section 1965(b) does not require that no other court have jurisdiction over all defendant); *Dale v. ALA Acquisitions, Inc.*, 203 F. Supp. 2d 694, 698-99 (S.D. Miss. 2002) ("the [end of justice] requirement is met when . . . no other forum exists in which to adjudicate all RICO claims.").  Section 1965(b) is not relevant here because each complaint only names the CEO as RICO defendant; therefore, the Court does not need to resolve this issue.  Additionally, it should be noted that in the lead case, the accountants, Lawrence and DePaul, have challenged Count II and Count III pursuant to Rules 8 and 9.

Eastern District of Louisiana and elsewhere over a period of at least ten years. *Id.* ¶¶ 49, 50, 55-58.

However, there is no allegation that the CEOs were personally involved in the tax affairs other than the bare allegations in the complaints. Uncontroverted affidavits state that the CEOs are neither responsible for the preparation and submission of tax documents nor have overseen such activities. The CEOs also declare that they never prepared, mailed, signed, or submitted any of the LAT12 forms in question. Bonvillain fails to submit any further evidence to rebut the affidavits. Moreover, the Court has determined that Bonvillain fails to allege the fraud with particularity.[17] Therefore, the Court does not find the basis to exercise specific jurisdiction over the CEOs.

In the opposition memorandum, Bonvillain strenuously argues that, based on the value of omitted or underreported property, the amount of delinquent taxes, and the extended period of violation, he reasonably infers that someone in the corporation must be responsible for the alleged fraudulent activities. By another inference, he asserts that the CEOs must have engaged in the preparation and submission of LAT12 forms. Instead of providing facts, Bonvillain attempts to persuade the Court to accept such inferences by arguing that the heightened pleading requirement under Rule 9(b) may be relaxed in cases where facts related to the alleged fraud are within the perpetrators' knowledge. Such conclusory allegations and inferences do not amount to a rebuttal to the affidavits. Again, any leeway that may be afforded a plaintiff when the defendant controls facts relating to the fraudulent scheme is not appropriate when the facts are susceptible to Bonvillain's articulation. *Dorsey*, 540 F.3d at 339.

---

[17] *See supra* II.B

Judicial discovery is inappropriate when the plaintiff fails to present a *prima facie* case of personal jurisdiction. *Deemer v. Bontz*, 2007 WL 3129485 *8 (N.D. Tex. 2007). Courts will not allow a plaintiff who fails to establish *prima facie* personal jurisdiction to conduct a fishing expedition in order to make a case. *Id*. Because Bonvillain failed to present the Court a *prima facie* case on personal jurisdiction, it is improper to allow judicial discovery or to let the issue be solved in trial.

## III. AMENDMENT

Finally, the Court addresses whether an opportunity to amend should be provided. With regard to standing, Bonvillain argues that dismissal of the current suits for lack of standing does not contribute to judicial economy because the sheriff will file suits on the same grounds. Bonvillain resorts to *In re Vivendi Universal, S.A. Sec. Litig.*, 605 F. Supp. 2d 570, 584 (S.D.N.Y 2009), where the court held that a reasonable time to cure standing defect should be granted if the real parties in interest wished to ratify plaintiff's actions, joined the lawsuit, or substituted for the plaintiff. *See also* Fed. R. Civ. P. 17.

Similarly, the issue whether the Court should a further opportunity to provide sufficient allegations pertaining to fraud is raised by these motions. The Court notes that after the Defendants filed their motions to dismiss, the Court allowed Bonvillain to amend the initial complaints. Yet the amended complaints still fail to establish his standing or make the required specification of fraud.

The Court is also concerned about its jurisdiction if the federal question claim is dismissed. In this regard, diversity has not been properly alleged in all cases. Where a limited

partnership or limited liability corporation is made a party, its citizenship is determined by the citizenship of its members. *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077 (5th Cir. 2008).

The Court will allow an amendment to cure any deficiency in any case if filed within ten days, at which point the order of dismissal will become effective.[18]

In ruling on these motions, the Court does not address any of the other issues raised in any of the motions.


Accordingly,

**A.  With regard to the motions to dismiss pursuant to Rule 12(b)(6)**

IT IS ORDERED that the Partial Motion to Dismiss Pursuant to Rule 12(b)(6) (Rec. Doc. 15) filed by Louisiana Land and Exploration Company (Case No. 09-3540) is GRANTED.

IT IS FURTHER ORDERED that the Motion to Dismiss Pursuant to Rule 12(b)(5) and 12(b)(6) (Rec. Doc. 17) filed by Donna K. Lawrence (incorrectly identified by plaintiff as "Laurence") and Nancy DePaul (Case Nos. 09-3540, 09-3541) is PARTIALLY GRANTED and PARTIALLY DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that the Partial Motion to Dismiss Pursuant to Rule 12(b)(6) (Rec. Doc. 23) filed by Burlington Resources Oil & Gas Co., LP (Case No. 09-3541) is GRANTED.

---

[18] Counsel are advised that any future motion, opposition or reply in these consolidated cases must be properly filed. It is not proper to file a motion that pertains to more than one case simply because counsel represents the parties in those cases. Instead, each motion, opposition or reply should reference a specific case or cases only if all arguments raised by all movers contained in that motion applies to that case or those cases. The arguments raised in the motion determine the case designation. Because of the extent of this problem demonstrated in the pending motions, future motions improperly filed are subject to being struck.

IT IS FURTHER ORDERED that the Motion to Dismiss Pursuant to Rule 12(b)(5) and 12(b)(6) (Rec. Doc. 24) filed by Nancy DePaul (Case Nos. 09-3541) is PARTIALLY GRANTED AND PARTIALLY DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that the Motions to Dismiss (Rec. Docs. 226, 228) filed by defendants in Case Nos. 09-3540; 09-3541, 09-5781; 09-5782; 09-5783; 09-5787; 09-5793; and 09-5795 is GRANTED.

IT IS FURTHER ORDERED that the Motion to Dismiss (Rec. Docs. 240) filed by defendants in Case Nos. 09-5784 and 09-5790 is GRANTED.

IT IS FURTHER ORDERED that Motion to Dismiss (Rec. Docs. 253) filed by Meridian Resource & Exploration LLC (Case No. 09-5789) is GRANTED.

**B. With regard to the motions to dismiss pursuant to Rule 12(b)(2)**

IT IS ORDERED that the Motion to Dismiss Pursuant to Rule 12(b)(2) (Rec. Doc. 213) filed by Jeffery D. Hildebrand (Case No. 09-5782) is GRANTED.

IT IS FURTHER ORDERED that the following motions to dismiss are GRANTED:

| Rec. Doc. # | Movant | Case No. |
|:---:|:---:|:---:|
| 215 | H. B. Sallee | 09-5795 |
| 219 | William K. Gayden | 09-5783 |
| 221 | H. Craig Clark | 09-5781 |
| 235 | Roger B. Plank | 09-5790 |
| 239 | Edgar A. Anderson | 09-5784 |

**C. With regard to the Rule 12(b) motion to dismiss**

IT IS ORDERED that the Rule 12(b) Motion to Dismiss (Rec. Doc 224) filed by Castex Energy, Inc. and John R. Stoika (Case No. 09-5802) is GRANTED.

IT IS FURTHER ORDERED that the Motion to Dismiss Pursuant to Rule 12(b)(2) and 12(b)(6) (Rec. Docs. 237) filed by Chaparral Energy, L.L.C. and Mark A. Fischer (Case No. 09-5803) is GRANTED.

IT IS FURTHER ORDERED that the plaintiff shall file any amended complaint responsive to the issue of standing, the allegations of fraud and diversity jurisdiction within ten days, at which time this order of dismissal becomes effective.

New Orleans, Louisiana, this 29th day of March, 2010.

HELEN G. BERRIGAN
UNITED STATE DISTRICT COURT